Joseph G. CHEROCHAK, Jr., Plaintiff,

v.

UNUM LIFE INSURANCE COMPANY
OF AMERICA, Defendant.

C.A. Nos. 9:07–3061–PMD,
9:07–0927–PMD.

United States District Court,
D. South Carolina,
Beaufort Division.

April 29, 2008.

Beth Ann Gilleland, Beth Ann Gilleland Law Office, Bluffton, SC, for Plaintiff.

Theodore Dubose Willard, Jr., Montgomery Patterson Potts and Willard, Columbia, SC, for Defendant.

## ORDER

PATRICK MICHAEL DUFFY, District Judge.

This matter is before the court upon Defendant Unum Life Insurance Company of America's ("Defendant") Motion for Summary Judgment and upon Plaintiff Joseph G. Cherochak, Jr.'s ("Plaintiff") Motion to Amend Complaint. For the reasons set forth herein, the court grants Plaintiff's Motion to Amend Complaint and grants in part and denies in part Defendant's Motion for Summary Judgment.

## BACKGROUND

On September 10, 2007, Plaintiff filed suit against Defendant in the United States District Court for the District of South Carolina, asserting that he purchased a group long-term disability benefits plan through his employer, Gambro Health Care, beginning on or about 1996. (Compl. in No. 3061 ¶ 4.) He further alleges that the premium payments for the policy were automatically deducted from

his paychecks. (*Id.*) On or about September 9, 1998, Plaintiff was involved in an automobile accident during the course of his employment which he alleges resulted in permanent injury and disability. (*Id.* ¶ 5.) Plaintiff made a claim for disability benefits from Defendant pursuant to the group policy, but such claim was denied by a letter dated December 7, 2000. (*Id.* ¶ 7.) This denial letter "stated that the Plaintiff was not entitled to any benefits as ... [it] allege[s] his condition was considered pre-existing inasmuch as it was the Defendant's position that the Plaintiff did not have an effective policy until January 1, 2000." (*Id.* ¶ 8.) The Defendant claimed that Plaintiff had declined long term disability coverage for 1998. (*Id.* ¶ 9.)

On or about July 19, 2005, Defendant contacted Plaintiff by letter regarding a Claims Reassessment Process. (*Id.* ¶ 10.) The United States Department of Labor conducted an investigation regarding the Defendant's claims handling practices involving claims covered by the Employee Retirement Income Security Act ("ERISA"), and Defendant entered into a Regulatory Settlement Agreement ("RSA") in November of 2004. (*Id.*) Pursuant to that agreement, Defendant agreed to pay a $15 million fine and conduct a reassessment for certain long-term disability claims dating back as far as 1997. (*Id.*) Plaintiff elected to participate in the Claims Reassessment Process and filed the appropriate form on October 24, 2005. (*Id.*)

Plaintiff alleges that as part of the reassessment process, he requested a copy of his policy and claim file, and he received a copy of his policy on September 6, 2005. (*Id.* ¶ 12.) According to Plaintiff, "[t]his was the first time the Plaintiff had been afforded an opportunity to examine his claim file in possession of the Defendant." (*Id.*) Plaintiff further alleged that

[t]he claim file did not contain any information supporting Defendant's claim that Plaintiff did not have a valid policy for long term disability. The Plaintiff's policy included in the claim file clearly states that its effective date is March 1, 1998. Further, all in-house documents included in the file indicated the policy effective date of coverage as March 1, 1998. Nothing in the file indicated that the Plaintiff had declined long term disability coverage in 1998.

(*Id.* ¶ 13.) Defendant denied Plaintiff's benefits a second time through the Reassessment Process by letter dated July 26, 2006. (*Id.* ¶ 18.) Plaintiff alleges the basis of the denial was the same as that of the original denial—that Plaintiff was not covered during 1998. (*Id.*)

Plaintiff thus filed suit, listing six causes of action: (1) breach of fiduciary duty pursuant to ERISA § 502(a)(3); (2) fraud; (3) fraudulent concealment; (4) breach of contract; (5) unjust enrichment; and (6) breach of contract with fraudulent intent. (*See* Compl. in No. 3061.)

Before Plaintiff filed suit in federal court, he filed suit against Defendant in the Court of Common Pleas for Beaufort County on or about March 14, 2007, and Defendant filed a Notice of Removal on April 5, 2007. The allegations in that action are substantially similar to the allegations in the Complaint originally filed in federal court: Plaintiff purchased group long-term disability benefits beginning in 1996; Plaintiff was in a car accident in 1998; and Defendant denied benefits, asserting that Plaintiff did not have an effective policy until 2000. (*See* Compl. in 9:07–927–PMD.) This Complaint listed the following causes of action: (1) breach of contract; (2) bad faith refusal to pay first-party benefits; and (3) violation of the South Carolina Unfair Trade Practices Act. (*See Id.*) On November 27, 2007,

Plaintiff filed a motion to consolidate Case Numbers 9:07–3061–PMD and 9:07–0927–PMD, and that motion was granted on December 17, 2007.

Defendant filed a Motion for Summary Judgment on December 5, 2007, to which both a Response and a Reply have been filed. Plaintiff filed a Motion to Amend Complaint on December 24, 2007, to which a Response and Reply have also been filed.

## STANDARD OF REVIEW

### A. Motion to Amend Complaint

 Rule 15(a) of the Federal Rules of Civil Procedure indicates that a court should "freely" give leave to amend a pleading "when justice so requires." While this court is given discretion to deny the motion to amend, "that discretion is limited by the interpretation given Rule 15(a) in *Foman* [*v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)], 'and by the general policy embodied in the Federal Rules favoring resolution of cases on their merits.'" *Island Creek Coal Co. v. Lake Shore, Inc.*, 832 F.2d 274, 279 (4th Cir. 1987) (citation omitted). Upholding the letter and the spirit of this rule, "leave to amend a pleading should be denied *only when* the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir.1999) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir.1986)) (emphasis in original). A delay in bringing a proposed amendment is insufficient reason to deny leave to amend. *Id.*

 For a motion to amend to be denied for futility, the amendment must be "clearly insufficient or frivolous on its face." *Oroweat Foods Co.*, 785 F.2d at 510–511; *see also Rambus, Inc. v. Infineon Tech., AG*, 304 F.Supp.2d 812, 819 (E.D.Va.2004) ("Courts generally favor the 'resolution of cases on their merits' ... [t]hus the substantive merits of a proposed claim [or defense] are typically best left for later resolution, *e.g.*, under motions to dismiss or for summary judgment, ..., or for resolution at trial.") (quoting *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir.1980)); *see also Robinson v. GEO Licensing Co., L.L.C.*, 173 F.Supp.2d 419, 423 (D.Md.2001).

### B. Motion for Summary Judgment

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir.1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir.1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The "obligation of the nonmoving party 'is particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir.1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d

723, 725 (4th Cir.1990)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual basis." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548.

### ANALYSIS

As a preliminary matter, Defendant argues in its Motion for Summary Judgment that Plaintiff's second, third, fourth, fifth, and sixth causes of action in Case No. 9:07–3061–PMD are preempted by ERISA. (*See* Mot. for Summ. J. at 4.) In his Response, Plaintiff concedes such causes of action are preempted by ERISA. (*See* Resp. in Opp'n to Mot. for Summ. J. at 1–2.) The court therefore dismisses Plaintiff's claims for fraud, fraudulent concealment, breach of contract, unjust enrichment, and breach of contract with fraudulent intent. *Cf. Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 195 (4th Cir.2002) ("[W]hen a claim under state law is completely preempted and is removed to federal court because it falls within the scope of § 502, the federal court should not dismiss the claim as preempted, but should treat is as a federal claim under § 502.").

According to Plaintiff, the only claim pending in the previously filed action (9:07–927–PMD) is a claim for benefits pursuant to ERISA § 502(a)(1)(B). (*See* Resp. in Opp'n to Mot. for Summ. J. at 1.) It thus appears to the court that after the above-described dismissal, the only claims remaining pending are a claim for benefits pursuant to ERISA § 502(a)(1)(B) and a claim for breach of fiduciary duty pursuant to ERISA § 502(a)(3).[1]

Defendant also argues summary judgment is appropriate because (1) Plaintiff's claim for breach of fiduciary duty pursuant to 29 U.S.C. § 1132(a)(3) fails as a matter of law in that Plaintiff has an adequate remedy under 29 U.S.C. § 1132(a)(1)(B); (2) Plaintiff's ERISA § 502(a)(3) claim additionally fails in that Plaintiff is seeking money damages, which are inappropriate under that section; and (3) Plaintiff's causes of actions are barred by the applicable statute of limitations. (*See* Mot. for Summ. J.) In his Response in Opposition, Plaintiff asserts Defendant's Motion for Summary Judgment is premature in light of the fact that Plaintiff has moved to amend his Complaint. (Resp. in Opp'n to Mot. for Summ. J. at 2.) Plaintiff also argues his claim for breach of fiduciary duty pursuant to 29 U.S.C. § 1132(a)(3) does not fail as a matter of law because he "does not have a remedy pursuant to 29 U.S.C. § 1132(a)(1)(B)." (*Id.* at 3.) In addition, Plaintiff states that his ERISA § 502(a)(3) claim is not a claim for legal relief in the form of money damages but instead is a claim for equitable restitution. (*Id.* at 6.) Lastly, Plaintiff asserts Defendant's Motion for Summary Judgment should be denied because the statute of limitations has not expired. (*Id.* at 7.)

### A. Motion to Amend

The court will first address Plaintiff's Motion to Amend because Plaintiff asserts summary judgment is inappropriate in light of this motion. Plaintiff "specifically requests to amend his pleadings to clarify his request for relief pursuant to 29 U.S.C. § 1132(a)(3), ERISA § 502(a)(3)." (Mot. to Amend at 2.) According to Plaintiff, such clarification "is especially necessary in light of the Plaintiff's dismissal of the state law causes of action which contain factual allegations relevant to the remaining cause of action for breach of fiduciary duty." (*Id.*) Plaintiff also seeks to amend his Complaint to add a cause of action for breach of contract "based upon the Plaintiff's third party beneficiary status of the

---

1. The court acknowledges that Plaintiff wishes to amend his Complaint.

Regulatory Settlement Agreement executed by Defendant in November 2004 as a result of an investigation by the United States Department of Labor into claims handling practices by the Defendant involving plans covered by ERISA." (*Id.*)

■ Defendant asserts the court should deny Plaintiff's Motion to Amend because it would be futile. Referring to its Motion for Summary Judgment, it argues Plaintiff should not be allowed to amend to reallege his § 1132(a)(3) claim because (1) he has an adequate remedy under § 1132(a)(1)(B); (2) monetary damages are not available under § 1132(a)(3); and (3) any claim under § 1132(a)(3) would be barred by the statute of limitations.

Pursuant to ERISA § 502(a)(3), a civil action may be brought by a "participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or terms of the plan." 29 U.S.C. § 1132(a)(3).

The court will first address whether Plaintiff's amendment would be futile because any claim under § 1132(a)(3) would be barred by the statute of limitations. Defendant asserts the applicable statute of limitations in the case *sub judice* is three years, but Plaintiff asserts that the appropriate statute of limitations is six years. Defendant argues the statute of limitations is ascertained by looking to state law, but Plaintiff asserts that ERISA provides the appropriate limitations period. Title 29, United States Code, Section 1113 states,

No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—

(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or

(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

The "subchapter" referred to is entitled "Protection of Employee Benefit Rights," and "this part" presumably refers to Part 4, "Fiduciary Responsibility," which contains 29 U.S.C. § 1101 through 29 U.S.C. § 1114. Because Plaintiff has brought suit pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Defendant argues that § 1113 does not apply. Indeed, § 1132(a)(3) is not contained within Part 4; it instead is within Part 5, "Administration and Enforcement."

The Tenth Circuit reached the result Defendant seeks in *Wright v. Southwestern Bell Telephone Co.*, 925 F.2d 1288 (10th Cir.1991). That court stated,

We hold the district court erred when it concluded that section 1113 was applicable to an action brought under section 1132. Section 1113 is, in fact, only applicable to actions arising out of violations of the portion of the Act addressing fiduciary responsibilities, 29 U.S.C. §§ 1101–12. [The plaintiff's] claim does not involve fiduciary responsibilities regarding financial solvency or accountability as contemplated by section 1113. The focus of his complaint is on [the defendant's] *administration* of the plan's benefits, specifically, the denial of his long-term disability benefits.

*Wright,* 925 F.2d at 1290 (citations omitted). Courts have certainly not spoken with unanimity on this issue, however. *Compare Wright,* 925 F.2d at 1290, *with Radford v. Gen. Dynamics Corp.,* 151 F.3d 396, 399 (5th Cir.1998) (applying § 1113 to a claim for breach of fiduciary duty pursuant to ERISA § 502(a)(3)).

■ While it is tempting to conclude that § 1113 does not apply to Plaintiff's cause of action pursuant to § 1132(a)(3) because § 1132 is not located within Part 4, the court concludes such a result would be erroneous for three reasons. First, several courts that have considered the issue have concluded that § 1113 applies in the context of all claims of breach of fiduciary duty pursuant to ERISA, even if the plaintiff brings the cause of action pursuant to § 1132. *See Trace v. Retirement Plan for the Salaried Employees of Merck & Co.,* 419 F.Supp.2d 846 (E.D.Va.2006) (applying the statute of limitations in § 1113 in the case of a complaint filed pursuant to ERISA § 502(a)(3)); *Schultz v. Texaco Inc.,* 127 F.Supp.2d 443, 450 (S.D.N.Y.2001) ("For claims under [ERISA] § 502(a)(3), the relevant limitations period is [ERISA] Section 413[, 29 U.S.C. § 1113]."). Even a case cited by Defendant to support its position provides some support for the proposition that § 1113 applies to all claims for breach of fiduciary duty. *See Carollo v. Cement & Concrete Workers Dist. Council Pension Plan,* 964 F.Supp. 677, 687 (E.D.N.Y.1997) ("Carollo misreads § 1113. Its limitation period applies to fiduciary duty actions brought not only under § 1132(a)(2), breach of fiduciary duty claims on behalf of a plan, but also under § 1132(a)(3), breach of fiduciary duty claims on behalf of an individual."); *see also Carollo,* 964 F.Supp. at 688 (stating the limitations period of § 1113 does not apply to Carollo's remaining claims pursuant to § 1132(a)(3) because the claims do not allege a breach of fiduciary duty under § 1104).

Second, while Plaintiff has brought a cause of action for breach of fiduciary duty under ERISA § 502(a)(3), that section does not outline a fiduciary's duties. It thus seems that at some point, reference to § 1104, which is entitled "Fiduciary Duties" and is contained within Part 4, will be required in order to determine what duties—if any—Defendant breached. Plaintiff alleges that Defendant "intentionally, knowingly and fraudulently misrepresented the status of Defendant's coverage for 1998 by stating that [Plaintiff] had declined coverage." (Compl. in 9:07–3061–PMD ¶ 24.) The court thus will not find determinative the fact that the procedural mechanism for Plaintiff's suit is located in Part 5.

Lastly, the court concludes that applying the § 1113 statute of limitations to Plaintiff's § 502(a)(3) claim is in line with Fourth Circuit authority. In *Dameron v. Sinai Hospital of Baltimore, Inc.,* 815 F.2d 975 (4th Cir.1987), the district court granted summary judgment in favor of the plaintiffs, and one of the issues on appeal was whether the statute of limitations barred plaintiffs' claims. *Dameron,* 815 F.2d at 981. The Fourth Circuit stated,

ERISA provides no explicit limitation period for bringing a private cause of action. In such circumstances, the federal courts look to state law for an analogous limitation provision to apply. *See Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). This case deals with a claim that Sinai breached its duty under the pension plan to provide the plaintiffs with their vested rights. The issue in this case is analogous, therefore, to a breach of contract action. The limitation period for contract actions under Maryland law is three years.

*Id.* (citations omitted). Although the claim at issue in *Dameron* was that the defen-

dants breached their duty under the pension plan to provide the plaintiffs with their vested rights, it is not clear that the plaintiffs were claiming the defendants breached their *fiduciary* duties. *See Dameron*, 815 F.2d at 977 n. 3 ("[T]he fiduciary obligations imposed on Sinai by ERISA ... are not the subject of this appeal.").

A later Fourth Circuit opinion also sheds light on this issue. In *Shofer v. Hack Co.*, 970 F.2d 1316 (4th Cir.1992), the plaintiff originally filed suit in state court, alleging claims for negligence, breach of contract, common law breach of fiduciary duty, and five claims pursuant to ERISA. *Shofer*, 970 F.2d at 1318. The claims were dismissed, and the plaintiff then brought action in federal court asserting essentially identical claims. *Id.* The district court granted the defendant's motion for summary judgment, concluding the plaintiff's claims were barred by § 1113(a)(2) and that equitable tolling did not apply. *Id.* The Fourth Circuit stated, "For *any* claim that alleges a breach of a fiduciary duty, ERISA provides a three-year statute of limitations. 29 U.S.C. § 1113(a)(2)." *Id.* (emphasis added).[2] Because the plaintiff had not filed his claims for breach of fiduciary duty within the requisite three-year time period, and because equitable tolling did not apply, the Fourth Circuit affirmed the district court's grant of summary judgment to the defendant on the breach of fiduciary duty claims. Furthermore, the court concluded the other claims were likewise barred by the statute of limitations:

> ERISA does not expressly provide a limitation period for bringing a private action other than for claims of a breach of fiduciary duty. Therefore, for any claim that does not assert that Hack breached a fiduciary duty, the court must look to state law and apply an analogous limitation provision. *Dameron v. Sinai Hosp. of Baltimore, Inc.*, 815 F.2d 975, 981 (4th Cir.1987). Because the claims that do not allege a breach of fiduciary duty are analogous to claims for either negligence or breach of contract, the court will apply the three-year statute of limitations for ordinary civil actions under Maryland law.

*Id.* at 1319.

In sum, this court concludes that § 1113 applies to all claims for a breach of fiduciary duty pursuant to ERISA. This determination, however, does not end the inquiry. Having determined that § 1113 applies, the court must now determine whether the claim pursuant to ERISA § 502(a)(3) is time-barred. Defendant asserts Plaintiff's cause of action arose on or around December 7, 2000, when Plaintiff learned his claim was being denied. (Mot. for Summ. J. at 14.) Plaintiff takes a different position, asserting he "did not have actual knowledge of the breach or violation until after the Plaintiff received a copy of the entire administrative record in late 2005, which would allow the Plaintiff to timely file an action until sometime in 2011." (Resp. in Opp'n to Mot. for Summ. J. at 7.) Plaintiff also asserts that even if this court were to find that Plaintiff received actual knowledge of the breach at the time of the first denial on December 7, 2000, Plaintiff's claim is still timely filed because the RSA tolled the statute of limitations during the claims reassessment process. (*Id.* at 7–8.)

Plaintiff argues that because Defendant, knowing Plaintiff purchased long-term disability benefits for 1998 and possessing documents so indicating, lied to Plaintiff and told him that his policy became effective in 2000, the case concerns fraud or concealment, such that the action "may be

---

**2.** The court notes that a three-year statute of limitations was appropriate as this case did not contain any allegations of fraud or concealment.

commenced not later than six years after the date of discovery of such breach or violation." 29 U.S.C. § 1113. The court assumes this provision is the applicable one because Defendant has not presented any evidence refuting Plaintiff's allegations of fraud. At issue, then, is when Plaintiff discovered the alleged breach. Plaintiff alleges that he purchased group long-term disability benefits beginning on or about 1996 and that premium payments were automatically deducted from his paychecks. (*See* Compl. in No. 9:07–3061–PMD ¶ 4.) After being injured in 1998, he applied to receive benefits, but these benefits were denied by letter dated December 7, 2000. (*Id.* ¶ 7.) The letter indicated that Plaintiff did not have an effective policy until January 1, 2000. (*Id.* ¶ 8.) Plaintiff took no further action until he was contacted regarding the Claims Reassessment Process, and during this process, he had the opportunity to examine his claim file. (*Id.* ¶ 12.) Plaintiff alleges that "[t]his was the first time the Plaintiff had been afforded an opportunity to examine his claim file in possession of the Defendant." (*Id.*) The Complaint further alleged that nothing in the file indicated Plaintiff did not have coverage in 1998. (*Id.* ¶ 13.)

■ Plaintiff certainly had knowledge on or around December 7, 2000, that Defendant denied his claim and that it was Defendant's position that Plaintiff did not have an effective policy until January 1, 2000. However, Plaintiff asserts the statute of limitations did not begin to run until September 6, 2005. The court must thus determine whether the statute of limitations began to run on December 7, 2000, or on September 6, 2005. In *J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.,* 76 F.3d 1245 (1st Cir.1996), one of the issues on appeal was whether the district court erred in holding that the "fraud or concealment" exception did not apply to toll the limitations period. *J. Geils,* 76 F.3d at 1252. In deciding that

question, the First Circuit had to determine when the limitations period begins to run in cases of fraud or concealment under § 1113. *Id.* The court stated,

> Resolution of this question requires us to decide what standard—objective or subjective—is to be applied when determining the "date of discovery." As the district court noted, other circuits have interpreted Section 1113 to incorporate the federal doctrine of "fraudulent concealment," which operates to toll the statute of limitations until the plaintiff in the exercise of reasonable diligence discovered or should have discovered the alleged fraud or concealment.

*Id.* The district court concluded the action was filed out of time because the "[a]ppellants were on inquiry notice of the alleged violations more than six years before the filing date." *Id.*

On appeal, the plaintiffs/appellants argued the district court erred in its construction of § 1113 "when it applied the objective standard under the fraudulent concealment doctrine." *Id.* The appellants argued that "because Section 1113 involves breaches of fiduciary duty, the term 'discover' used in connection with fraud or concealment should mean that the six-year limitation period begins to run only when [a]ppellants, who are unsophisticated investors, subjectively gained knowledge that their fiduciary made material misrepresentations to them." *Id.* To support their arguments, the appellants pointed to the plain language of § 1113, noting that Congress "did not include the phrase 'knew or should have known.'" *Id.* at 1252–53. They also "maintain that adopting a subjective standard comports with Congress' mandate that ERISA be liberally construed to protect pension beneficiaries and to ensure the highest standards of fiduciary conduct." *Id.* at 1253.

■ In addressing the appellants' arguments, the First Circuit began with the statutory language and noted,

> Section 1113's tolling provision provides that "in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation." 29 U.S.C. § 1113. As the District of Columbia Circuit recently noted, this is the only provision in Section 1113 for delaying the accrual of the limitations period until the date of discovery. By its very language, then, Section 1113 explicitly incorporates the federal common law "discovery rule," which postpones the beginning of the limitation period from the date when the plaintiff is injured to the date the injury is discovered.... We find that Section 1113's discovery rule is almost identical to that of Section 13 [of the Securities Act of 1933] and perceive no reason why we should not ... hold that Section 1113 also incorporates the fraudulent concealment doctrine. Moreover, we have yet to encounter a convincing argument as to why we should part company from those circuits which have already addressed this issue and have concluded that Section 1113 indeed incorporates the fraudulent concealment doctrine.

*Id.* (citations omitted). The court also concluded that the scope of "discovery" in the fraud or concealment exception encompasses both actual and constructive discovery. *Id.* at 1254. It stated, "Congress knew how to require 'actual knowledge,' and did so for the three-year limitations period under Section 1113(2). Holding that the fraud or concealment exception extends the limitations period to six years from the date of actual discovery would conflict with the fact that the preceding three-year period runs from the date of 'actual knowledge.' " *Id.* The court noted that "incorporating the notion of constructive discovery comports with the general

requirement under the fraudulent concealment doctrine that there be a showing of reasonable diligence before tolling is allowed." *Id.*

■ Turning to the standard when determining the date of discovery, the court stated that "whether a plaintiff should have discovered the alleged fraud is an objective question requiring the court to determine if the plaintiff possessed such knowledge as would alert a reasonable investor to the possibility of fraud." *Id.* (internal quotation marks omitted). In summary, the court held

> that the fraud or concealment tolling provision of Section 1113 incorporates the fraudulent concealment doctrine, which operates to toll the statute of limitations where a plaintiff has been injured by fraud and remains in ignorance of it without any fault of want of diligence or care on his part until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party. Accordingly, in order to toll the limitations period under Section 1113's fraud or concealment exception, Appellants must demonstrate that (1) defendants engaged in a course of conduct designed to conceal evidence of their alleged wrong-doing and that (2) the plaintiffs were not on actual or constructive notice of that evidence, despite (3) their exercise of reasonable diligence.

*Id.* at 1255 (internal quotation marks and citations omitted).

In the case *sub judice*, Plaintiff alleges in his Complaint that he was paying premiums, via a deduction from his paychecks, for the group long-term disability benefits plan at issue as far back as 1996. When Plaintiff sought to obtain benefits under the plan, he was informed via letter dated December 7, 2000, that he did not have an

effective policy until January 1, 2000. Indeed, Plaintiff seems to argue that the statute of limitations did not begin to run until September of 2005 because that is when he learned Defendant was in possession of documents indicating that Plaintiff was covered on the date of the accident. However, Plaintiff obviously believed he was covered at the time of his accident, as is evidenced by the fact that he sought to obtain benefits, and he was informed in December of 2000 that Defendant was denying benefits because Plaintiff did not have an effective policy on the date at issue. Assuming Defendant engaged in a course of conduct designed to conceal evidence of its alleged wrongdoing, Plaintiff's claim was filed more than six years after December 7, 2000.

■ While it appears Plaintiff's claim is thus out of time, Plaintiff has one final argument: he argued that even if this court concluded that the statute of limitations began to run in December of 2000, the action was still timely because the Regulatory Settlement Agreement tolled the statute of limitations during the claims reassessment process. (Pl.'s Resp. in Opp'n to Mot. for Summ. J. at 8.) Defendant, in responding to this argument, said only that Plaintiff's reliance on the RSA is "misplaced" because (1) Plaintiff did not participate in the RSA until after the statute of limitations had already expired, and (2) the language of the RSA "specifically states that the RSA does not revive any expired statute of limitations." (Def.'s Reply at 8.) Defendant's argument is availing, however, only if it was correct about the statute of limitations being three years. As noted above, the court concludes the proper limitation period was six years. Because Plaintiff had notice of his claim on December 7, 2000, the statute of limitations would run on December 7, 2006. Thus, when Plaintiff filed his claim for reassessment on October 24, 2005, the statute of limitations had not run. Plaintiff asserts he received the letter denying benefits pursuant to the reassessment process on September 6, 2006. Plaintiff thus had an additional ten months to file his lawsuit and still be within the six-year statute of limitations. Adding these ten months to December 7, 2006, Plaintiff's suit would certainly be timely filed if it were filed on or before October 7, 2007. Both of the instant lawsuits were filed before this date. Thus, while Defendant may be correct in arguing the RSA does not revive an already expired statute of limitations, such argument is not availing in this case, as the statute of limitations had not expired prior to the claims reassessment process.

■ Defendant also argues the court should deny Plaintiff's Motion to Amend Complaint because Plaintiff has an adequate remedy under ERISA § 502(a)(1)(B). In an unpublished opinion, the Fourth Circuit concluded that because a plaintiff had a right to seek benefits under ERISA § 502(a)(1)(B), she could not sue for breach of fiduciary duty under ERISA § 502(a)(3). *See Dwyer v. Metro. Life Ins. Co.*, 4 Fed.Appx. 133, 142 (4th Cir.2001); *see also Varity Corp. v. Howe*, 516 U.S. 489, 515, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) ("[W]here Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'"); *Dunbar v. Orbital Sciences Corp. Group Disability Plan*, 265 F.Supp.2d 572, 588 (D.Md.2003) ("[W]here a plaintiff is entitled to seek relief under ERISA for the wrongful denial of disability benefits, claims against a plan administrator for breach of fiduciary duty are foreclosed."). The Fourth Circuit has also stated that "'[w]hen a beneficiary simply wants what was supposed to have been distributed under the plan, the appropriate

remedy is § 502(a)(1)(B).' " *Coyne & Delany Co. v. Blue Cross & Blue Shield of Va., Inc.*, 102 F.3d 712, 715 (4th Cir.1996) (quoting *Corcoran v. United HealthCare, Inc.*, 965 F.2d 1321, 1335 (5th Cir.1992)).

While Plaintiff does seek an award of benefits, he also seems to seek a refund of his premium payments if he is not awarded benefits. In his cause of action for unjust enrichment, Plaintiff stated, "Plaintiff is informed and believes that the Defendant has retained funds belonging to the Plaintiff to which the Defendant is not entitled, either in the form of benefits not paid under the group policy, or premiums paid for a policy which did not exist." (Compl. in No. 3061 ¶ 55.) While the Plaintiff has agreed to dismiss this cause of action, Plaintiff has also asked to amend his Complaint in light of this dismissal. To the extent the Plaintiff is seeking a refund of premiums he paid, the court concludes his claim under ERISA § 502(a)(3) does not fail as a matter of law. The Supreme Court in *Varity Corporation* concluded that § 502(a)(3) provides "appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Varity Corp.*, 516 U.S. at 512, 116 S.Ct. 1065. ERISA § 502(a)(1)(B) permits a participant or a beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Section 502(a)(1)(B) says nothing of a plaintiff recovering a refund of premium payments made, and the court thus concludes that Plaintiff's § 502(a)(3) claim does not fail as a matter of law.

Defendant also argues that the court should deny Plaintiff's Motion to Amend his Complaint because the monetary damages Plaintiff seeks are not available under ERISA § 502(a)(3). ERISA § 502(a)(3) does mandate that any form of relief granted be equitable, *see* 29 U.S.C. § 1132(a)(3), and the Supreme Court explained the difference between restitution at law and restitution at equity in the context of § 502(a)(3) in *Great–West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002). The Court said,

> [N]ot all relief falling under the rubric of restitution is available in equity.... [R]estitution is a legal remedy when ordered in a case at law and an equitable remedy when ordered in an equity case, and whether it is legal or equitable depends on the basis for the plaintiff's claim and the nature of the underlying remedies sought.
>
> In cases in which the plaintiff could not assert title or right to possession of particular property, but in which nonetheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him, the plaintiff had a right to restitution *at law* through an action derived from the common-law writ of assumpsit....
>
> In contrast, a plaintiff could seek restitution *in equity*, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession.... Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession.

*Id.* at 212–14, 122 S.Ct. 708 (internal quotation marks and citations omitted).

■ While Defendant argues that money damages are not appropriate under § 502(a)(3), it seems to acknowledge that restitution is a form of equitable relief that

may be available pursuant to that section of ERISA. (*See* Mot. for Summ. J. at 13.) The Supreme Court, in *Mertens v. Hewitt Associates*, 508 U.S. 248, 255, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993), noted that injunctions and restitution were traditionally viewed as equitable remedies. If a plaintiff is simply seeking "monetary relief for all losses [the] plan sustained as a result of the alleged breach of fiduciary duties," then the plaintiff has requested the "classic form of *legal* relief." *Id.* However, a reading of Plaintiff's Complaint reveals that Plaintiff is seeking, at least in part, an equitable remedy, as he is seeking recovery of the premiums he paid to Defendant. The court concludes that Plaintiff has sought a remedy that is available under ERISA. *Cf. Mertens v. Hewitt Assocs.*, 948 F.2d 607, 612 (9th Cir.1991) ("Restitution was not available because unjust enrichment to support the plaintiffs' claim was not alleged."). Plaintiff will thus be allowed to amend his claim pursuant to ERISA § 502(a)(3).

Plaintiff also seeks to amend his Complaint to add a cause of action for breach of contract "based upon Plaintiff's third party beneficiary status of the Regulatory Settlement Agreement executed by Defendant in November 2004 as a result of an investigation by the United States Department of Labor into claims handling practices by the Defendant involving plans covered by ERISA." (Mot. to Amend at 2.) Defendant opposes such an amendment, arguing an amendment would be futile because this cause of action would be preempted by ERISA. (Resp. in Opp'n to Mot. to Amend at 2.) Defendant also argues that "even assuming ... ERISA would not preempt Plaintiff's proposed third party beneficiary theory, Plaintiff does not have standing to enforce the terms of the RSA." (*Id.*)

The court must determine whether allowing amendment of Plaintiff's complaint to assert a breach of contract action pursuant to the Regulatory Settlement Agreement would be futile. Plaintiff asserts such an amendment would not be futile because "the issue of whether or not a state cause of action to enforce the RSA is preempted by ERISA has not been considered by this Court or the Fourth Circuit, and therefore, would not be clearly insufficient or frivolous on its face." (Pl.'s Reply at 2.)

Plaintiff is correct that the Fourth Circuit has not spoken directly regarding whether or not a state cause of action to enforce the RSA is preempted by ERISA. Indeed, after having read the parties' memoranda and performing its own legal research, the court has only found one case discussing the issue: *Goldberg v. Unum Life Insurance Co. of America*, 527 F.Supp.2d 164 (D.Me.2007). The United States District Court for the District of Maine granted the defendants' motion to dismiss, concluding the plaintiff's claims were preempted by ERISA. *Goldberg*, 527 F.Supp.2d 164. The plaintiff in that case asserted two claims against the defendants: (1) a breach of contract against Unum Life, alleging that defendant's "refusal to reinstate the balance of payments due to [him] was a breach of the duties and responsibilities set forth in the RSA and was a failure of Unum Life's obligation to comply with the terms and conditions of the RSA"; and (2) a claim for tortious interference with contractual relationships against Unum Group, alleging that but for the interference "with the contractual relationships between the plaintiff and Unum Life arising out of the Regulatory Settlement Agreement the plaintiff would have been paid the long-term disability benefits due under the original disability contract." *Id.* at 167–68. The defendants moved to dismiss, arguing the claims were preempted by ERISA, but the plaintiff argued dismissal was inappropriate as his "claims

... are derived not from Unum's group disability plan itself, but from the terms of the RSA entered into between the [d]efendants and the insurance regulators of 49 states, of which [the plaintiff] is a third-party beneficiary." *Id.* at 168.

The court concluded the plaintiff's breach of contract claim was preempted by ERISA. *Id.* at 169–71. The court stated that the plaintiff's arguments "that his claims are not 'derived' from the plan and that the RSA is somehow entirely 'independent' from the plan[ ] belie the actual allegations in his Amended Complaint." *Id.* at 169–70. The court noted the "heart" of the plaintiff's complaint was the refusal to pay long-term disability benefits under the terms of an ERISA-governed policy. *Id.* at 170. It stated, "Because the terms of [p]laintiff's policy, an ERISA plan, govern his entitlement to benefits, it would be impossible to determine whether [d]efedants' decision not to reinstate benefits constituted a breach of contract without consulting and applying the terms of the ERISA plan." *Id.* The court further stated,

> Although [p]laintiff attempts to avoid preemption through his reliance on the RSA, he does not allege that the RSA in any way sought to alter the terms or conditions of his policy. To the contrary, the Amended Complaint makes clear that the RSA simply provided a process whereby certain claimants could have their claims for benefits under their policies reassessed. Nor does [p]laintiff allege that Unum Life failed to do what it [was] supposed to do under the terms of the RSA. Instead, [p]laintiff's Amended Complaint asserts that he elected to have Unum Life reassess his claim and participated in the reassessment ... [and] on March 20, 2007, Unum Life ... communicated its final determination of unwillingness to reconsider payment of additional benefits. The breach [p]laintiff alleges is Unum's

refusal to reinstate the balance of payments. It is impossible to consider the breach without consulting and applying the terms of that original disability contract.

> Although Plaintiff weakly attempts to avoid preemption by vague references to the RSA, it is abundantly clear that in order to prevail on his breach of contract claim, Plaintiff must plead, and the court must find, that an ERISA plan exists. Clearly, the state law claims in Plaintiff's Amended Complaint are preempted.

*Id.* at 170–71 (internal quotation marks and citations omitted).

Section 514(a) of ERISA specifically preempts "all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). This preemption provision has "unparalleled breadth," *Holland v. Burlington Indus., Inc.*, 772 F.2d 1140, 1147 (4th Cir.1985), *abrogated on other grounds by Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), and a law " 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983).

Turning to the case *sub judice*, the court grants Plaintiff's Motion to Amend his Complaint. The standard governing a Motion to Amend is a lenient one, and the court declines to conclude that an amendment would be frivolous without the benefit of knowing what allegations Plaintiff would add to his Complaint. Although the court in *Goldberg* determined the plaintiff's claim was preempted, a close reading of the opinion reveals the court based its decision on the *allegations* of the complaint, and if this court denies Plaintiff's Motion to Amend, it will never know what allegations Plaintiff would have

made. Furthermore, to the extent Defendant argues Plaintiff does not have standing to enforce the terms of the RSA, the court concludes such a decision is not warranted in the context of the present motion. *See HALL v. UNUM–PROVIDENT CORP.*, No. CV06–238, 2006 WL 5218465, 2006 Me.Super. LEXIS 262 (Me.Super. Dec. 20, 2006) (granting the defendant's motion to dismiss the plaintiff's claim that alleged breach of the RSA because the plaintiff was ineligible to bring suit to enforce the RSA but noting that the plaintiff's claim did not fall within the applicable time period of the RSA); *Jones v. Unum Life Ins. Co. of America*, No. 4:06CV00547 JLH, 2006 WL 3462130, 2006 U.S. Dist. LEXIS 87384 (E.D.Ark. Nov. 29, 2006) (allowing the plaintiff to amend her complaint to allege a claim for breach of a regulatory settlement agreement). While Plaintiff may not ultimately prevail on this cause of action, the court concludes Plaintiff should be allowed to amend his Complaint.

## B. Motion for Summary Judgment

As noted above, Defendant moved for summary judgment on three grounds: (1) that Plaintiff's claim for breach of fiduciary duty pursuant to § 1132(a)(3) fails as a matter of law because Plaintiff has an adequate remedy under § 1132(a)(1)(B); (2) Plaintiff's ERISA § 502(a)(3) claim additionally fails in that Plaintiff is seeking monetary damages, which are inappropriate under § 1132(a)(3); and (3) Plaintiff's causes of action are barred by the statute of limitations. (*See* Mot. for Summ. J.)

Plaintiff makes several arguments opposing the Motion for Summary Judgment, and one such argument is that Defendant has not properly supported its motion. (*See* Resp. in Opp'n to Mot. for Summ. J. at 2–3.) Plaintiff asserts Defendant has not met its burden to demonstrate the absence of a genuine issue of material fact. (*Id.* at 2.) Plaintiff states,

Defendant has utterly failed to set forth any facts or other supporting documentation refuting Plaintiff's claim that a valid policy was in existence at the time of the Plaintiff's injury, and that the Defendant has knowingly misrepresented Plaintiff's status, as alleged in Plaintiff's complaint. As such, the Defendant has not … met its burden and the Court must deny summary judgment.

(*Id.* at 3.) Although Plaintiff is correct that Defendant has not submitted evidence refuting Plaintiff's claim that he had a valid policy on the date of the accident in 1998, Defendant need not present such evidence in order for the court to address the legal arguments contained in Defendant's motion. In other words, Defendant appears to have assumed, for purposes of its motion, that the policy at issue was effective in 1998. The court thus concludes that it is not obligated to deny the motion for failure to comply with the standard set forth in Rule 56 of the Federal Rules of Civil Procedure.

In addressing Plaintiff's Motion to Amend, the court has addressed and rejected Defendant's argument that Plaintiff's claim for breach of fiduciary duty under ERISA § 502(a)(3) fails because Plaintiff has an adequate remedy under § 1132(a)(1)(B). Likewise, the court has addressed and rejected Defendant's argument that Plaintiff's ERISA § 502(a)(3) claim fails because Plaintiff is seeking monetary damages not available under that subsection. Furthermore, the court has concluded Plaintiff's cause of action pursuant to ERISA § 502(a)(3) was timely filed. The court thus denies Defendant's Motion for Summary Judgment with respect to Plaintiff's claim under ERISA § 502(a)(3). However, the court must address the timeliness of Plaintiff's claim pursuant to ERISA § 502(a)(1)(B).

Because Plaintiff's claim pursuant to ERISA § 502(a)(1)(B) does not involve

an assertion that Defendant breached its fiduciary duty, the court must look to state law and apply an analogous limitation provision. *Shofer v. Hack Co.,* 970 F.2d 1316, 1319 (4th Cir.1992); *Dameron v. Sinai Hosp. of Baltimore, Inc.,* 815 F.2d 975, 981 (4th Cir.1987). As the Fourth Circuit noted in *Shofer,* the appropriate state statute of limitations to look to is that for negligence or breach of contract. *Shofer,* 970 F.2d at 1319. Under South Carolina law, the statute of limitations for both a breach of contract action and a negligence action is three years. *See* S.C.Code § 15–3–530; *see also Walsh v. Woods,* 358 S.C. 259, 264, 594 S.E.2d 548, 551 (Ct.App.2004); *Wolfberg v. Greenwood Dev. Corp.,* 868 F.Supp. 132, 134 (D.S.C.1994).

■ "An ERISA cause of action does not accrue until a claim of benefits has been made and formally denied." *Rodriguez v. MEBA Pension Trust,* 872 F.2d 69, 72 (4th Cir.1989). "This means that the statute of limitations begins to run at the moment when the plaintiff may seek judicial review, because ERISA plaintiffs must generally exhaust administrative remedies before seeking judicial relief." *White v. Sun Life Assur. Co. of Can.,* 488 F.3d 240, 246 (4th Cir.2007) (citing *Makar v. Health Care Corp. of the Mid–Atlantic (Carefirst),* 872 F.2d 80, 81 (4th Cir.1989)); *see also Payne v. Blue Cross & Blue Shield of Va.,* 976 F.2d 727, 1992 WL 235537, *2 (4th Cir.1992) (unpublished table decision) ("It is well established that an ERISA cause of action accrues when there has been a denial of asserted rights which is made clear to the beneficiary."); *Dameron v. Sinai Hosp. of Baltimore, Inc.,* 595 F.Supp. 1404, 1413 (D.Md.1984).

■ In the case *sub judice,* Plaintiff applied for benefits pursuant to the policy at issue, and he received a letter denying such benefits on or about December 7, 2000. The earliest of these lawsuits was filed in state court on March 14, 2007.

Plaintiff waited over six years after receiving notice of the denial of benefits before he brought suit for such benefits, and for this reason, the court concludes Plaintiff's claim for benefits under ERISA § 502(a)(1)(B) is time-barred. The court thus grants Defendant's Motion for Summary Judgment on this claim.

### *CONCLUSION*

It is therefore **ORDERED,** for the foregoing reasons, that Plaintiff's Motion to Amend Complaint is **GRANTED.** It is further **ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART.** Specifically, the court grants Defendant's Motion for Summary Judgment on Plaintiff's claim pursuant to ERISA § 502(a)(1)(B). The court denies Defendant's Motion for Summary Judgment on Plaintiff's claim pursuant to ERISA § 502(a)(3).

**AND IT IS SO ORDERED.**